UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
          :
  JENNIFER SACHS,         :
                      Plaintiff,  :
          :
              -v-          :          10 Civ. 1663 (JPO)
          :
  JOSEPH MUSA, *et al.*,    :          OPINION AND ORDER
                    Defendants.  :
          :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      This case was tried before a jury on January 22 through 28, 2014. On January 29, 2014, the jury returned a verdict in favor of Defendants on all outstanding claims. Plaintiff Jennifer Sachs has moved for judgment in her favor notwithstanding the verdict, or, in the alternative, an order directing a new trial. Defendants City of New York, Joseph Musa, William Cantwell, and Alexandra Basil (the City Defendants) have moved for attorneys' fees under 42 U.S.C. § 1988. In opposition to the motion for attorneys' fees, Sachs filed an affirmation in which she moves for sanctions against counsel for the City Defendants. For the reasons that follow, Sachs's motions are denied in all respects. The City Defendants' motion is also denied.

**I.      Motion for Judgment Notwithstanding the Verdict**

      Judgment as a matter of law is appropriate only if reasonable minds could not differ about the import of the evidence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51 (1986); *see*

Fed. R. Civ. P. 50.[1]  Rule 50(b) motions are therefore decided by viewing all evidence in the light most favorable to the jury verdict.  *Zellner v. Summerlin*, 494 F.3d 344, 370–71 (2d Cir. 2007) (citing *Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005)).  The Court must disregard any evidence that weighs against the jury's verdict unless the jury was *required* to believe it.  *Id.* at 370 (citing *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150–51 (2000)).  The Court therefore disregards the testimony of an interested witness, such as the movant herself, especially where her credibility has been impeached.  A jury is never required to believe such testimony—even if the testimony is not contradicted.  *See, e.g.*, *Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir. 2006) ("Adverse credibility determinations are appropriately based on inconsistent statements . . . and inherently improbable testimony.") (citation omitted); *Purcell v. Waterman Steamship Corp.*, 221 F.2d 953, 954 (2d Cir. 1955) (*per curiam*) ("[T]here is no rule that the testimony of witnesses must be accepted if they are not contradicted and if their credibility is not impeached."); *Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir. 1952) (Hand, J.) ("[S]uch evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such . . . arrogance or defiance, as to give assurance that he is fabricating.").  The question

---

[1] Because a postverdict Rule 50 motion is a renewal of a preverdict motion, the general rule is that a postverdict motion may be granted only on grounds specified in a preverdict motion.  *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) (citing Fed. R. Civ. P. 50 Adv. Comm. Note (2006)).  Sachs did not file a written Rule 50 motion before this case was submitted to the jury, and she has not filed a transcript of the grounds specified in counsel's oral Rule 50 motion.  This makes it difficult for the Court to determine which arguments are renewed in this motion and which arguments are raised for the first time.  And it is especially bewildering that, with respect to claims against Officer Musa, counsel chose to "rel[y] upon the arguments made orally . . . and incorporate[] the same as if reprinted herein," when he has neglected to provide a transcript of those arguments.  (Pl.'s Mot. at 5, Dkt. No. 215.)  In the end, it is not relevant whether Sachs previously raised the arguments she raises here, because the Court denies her motion in any event.

is whether, if credibility assessments are made against the moving party and all reasonable inferences are drawn against the moving party, a reasonable jury nevertheless would have no choice but to find in the movant's favor. *Zellner*, 494 F.3d at 370–71 (citing *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993)). Unsurprisingly, this high standard is rarely satisfied by the party bearing the burden of proof at trial. Wright & Miller, 9B Fed. Prac. & Proc. Civ. § 2535.

The following analysis is based on the Court's recollection of the evidence presented at trial. Although Sachs has requested that the Court set aside the jury's verdict, she has not supported her motion with a complete transcript of the testimony in this case.

### A. Claims Against S&W Defendants

Sachs tried assault and battery claims against Defendant Aaron Sagendorf and vicarious liability claims against his alleged employers, Smith & Wollensky and Fourth Wall Operating Corporation (together, the S&W Defendants). Under New York law, assault is intentionally placing a person in fear of imminent harmful or offensive contact. *Chamberlain v. City of White Plains*, __ F. Supp. 2d __, 2013 WL 6477334, at *23 (S.D.N.Y. Dec. 10, 2013) (citing *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F. 2d 105, 108 (2d Cir. 1993)). Battery is intentionally making harmful or offensive physical contact with another person without that person's consent. *Id.* (citing *United Nat'l Ins. Co.*, 994 F.2d at 108). A person is justified in committing assault and battery to defend himself or another if he is not the initial aggressor, he reasonably believes that the person he is defending is about to be subject to a physical attack, and he uses force that is reasonable under the circumstances. *Killon v. Parrotta*, 98 A.D.3d 828 (3d Dep't 2012); Restatement (Second) of Torts §§ 63, 67, 76. Finally, an employer is vicariously liable for torts committed by its employees while they are acting in furtherance of the employer's

business and within the scope of their employment. *Doe v. Guthrie Clinic, Ltd.*, 5 N.E.3d 578 (2014) (citing *N.X. v. Cabrini Med. Ctr.*, 97 N.Y. 2d 247, 252–53 (2002)).

On the basis of Sagendorf's testimony alone, the jury was entitled to adopt the following view of the evidence in this case: Sagendorf heard a crash and saw a wet spot on the wall and a broken pitcher behind the bar. He saw Sachs screaming at the bartender, and at least once, she called him an asshole. She appeared to be intoxicated. Sagendorf concluded that Sachs had thrown a glass water pitcher at the bartender's head. In defense of the bartender, Sagendorf put his hands on Sachs's shoulders, turned her around, and guided her toward the exit of the bar. Sachs slapped Sagendorf and kicked him in the groin. When Sachs tried to kick Sagendorf again, he caught her leg in his hands to defend himself, and she fell over. He then restrained her on the ground in self-defense. When Sagendorf let Sachs go, she attempted to kick him in the groin a second time. He again restrained her on the ground in self-defense. Each time Sagendorf approached or touched Sachs, he acted with a reasonable belief that she was about to physically attack him or the bartender. Sagendorf used only the amount of force that a reasonable person would use to thwart Sachs's attacks. According to this interpretation of the evidence, the S&W Defendants are not liable for assault or battery.

Sachs nevertheless argues that "it is uncontested that Sagendorf committed a battery." (Pl.'s Mot. at 7, Dkt. No. 215.) Because it is patently obvious that the S&W Defendants do contest that Sagendorf committed a battery, Sachs presumably intends to argue that the evidence in support of her claim was uncontroverted, and therefore, the jury was required to accept the evidence as true. This argument is incorrect for two reasons. First, Sachs's evidence was called into question by Defendants' evidence in many material respects. For the purposes of this opinion, it is only necessary to address how Sagendorf's testimony undermined each of the

points raised in pages 7–8 of Sachs's motion. On the basis of Sagendorf's testimony, a rational jury could have concluded that the way Sagendorf placed his hands on Sachs and turned her around was not harmful or offensive. A rational jury could have concluded that, even if Sagendorf intended to be imposing, Sachs was not in apprehension of an imminent battery while Sagendorf guided her out of the bar. A rational jury could have concluded that, even if Sagendorf did not see Sachs throw anything, he acted with the reasonable belief that Sachs had thrown a glass pitcher at the bartender's head. A rational jury could have concluded that, even if Sachs did not wind up to throw a second glass object at the bartender's head, Sagendorf acted with the reasonable belief that she might do so. Sagendorf had no legal duty to speak to Sachs or the bartender before he acted in the bartender's defense, and he had no legal duty to act in accord with the way he had acted during previous bar fights. These points are not relevant to the rationality of the conclusion that Sagendorf acted in legally justified defense of the bartender, nor the equally permissible conclusion that Sagendorf's initial actions did not constitute assault or battery.

    Second, even if Sachs's testimony had been uncontroverted, judgment as a matter of law would not be appropriate. It is an understatement to say that a rational jury was free to discredit Sachs's testimony in this case. Sachs was an interested witness, which is reason enough to permit the jury to discredit her testimony, but she was so unbelievable that the jury could have disregarded her testimony even if she were a disinterested witness. It was plain from Sachs's demeanor that she intended to tell a dramatic story rather than testify to the facts as she recalled them. Sachs appeared to be incapable of confining her answers to counsel's questions or resisting the urge to elaborate on details when a straightforward answer would do. More importantly, Sachs's testimony was rife with inconsistencies and wholly implausible claims. She

5

described events during which she also claimed to have been unconscious. She claimed to have been punched and kicked in the head, and she claimed to have broken her patella, but her chief complaint to the responding EMTs was that she wanted a ring cut off her finger. She explained unfavorable evidence in multiple medical records, and unfavorable statements in a recording of her 911 call, by claiming that all of this evidence had been doctored to make her look bad. She admitted to asking a medical provider to alter her records in a way that would be favorable to her claims in this case. These are just some of the more noteworthy highlights of Sachs's testimony. The Court cannot catalog all of the truly jaw-dropping moments because, as noted, counsel has asked the Court to direct a verdict in his client's favor without furnishing a complete transcript of the trial.

In short, if the jury made all credibility assessments and drew all reasonable inferences in favor of the S&W Defendants, the jury could have drawn a rational conclusion that the S&W Defendants were not liable on all counts.

**B.     Claims Against Officer Musa**

Sachs also tried claims against Officer Musa for assault and battery under New York law and use of excessive force in violation of the Fourth and Fourteenth Amendments. Counsel has not supplied a transcript of the oral arguments he made in support of his Rule 50 motion on these claims, and he has not gone to the trouble of writing down the basis for his motion. The Court declines to speculate about that basis here. It is sufficient to observe that the jury was entitled to credit Officer Musa's testimony. Officer Musa testified that he did not use force against Sachs except to handcuff her and walk her to and from a police car. Given the Court's prior ruling that Sachs was lawfully arrested, Officer Musa was privileged to use this limited amount of force against her. His actions did not violate state or federal law.

**II.     Motion for a New Trial**

Sachs has moved for an order directing a new trial because (1) the Court denied her request to supplement the jury instructions after the jury had begun deliberating, and (2) statements that two jurors made as they exited the courthouse suggest—according to Sachs—that the jurors did not follow the jury instructions.

First, the Court properly refused Sachs's proposed supplemental instruction to the jury. District courts have "considerable discretion" to determine whether to give a supplemental instruction in response to a note indicating that the jury is confused.  *Henry v. Dep't of Transp.*, 69 Fed. App'x 478, 480 (2d Cir. 2003) (quoting *United States v. Parker*, 903 F.2d 91, 101–02 (2d Cir. 1990)).  But the Court does not have discretion to give an instruction that withdraws a valid theory of defense, supported by sufficient evidence, from the jury's consideration. *Ruggiero v. Krzeminski*, 928 F.2d 558, 561 (2d Cir. 1991) (citing *Cutlass Productions, Inc. v. Bregman*, 682 F.2d 323, 327 (2d Cir. 1982)) (so holding in the context of special interrogatories). A party objecting to the court's refusal to instruct the jury must propose a lawful instruction that does not overstate the law in that party's favor.  *See id.*; *see also Parker v. City of Nashua*, 76 F.3d 9, 12 (1st Cir. 1996) (citing *Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 944 (1st Cir. 1995)). It is important for the objecting party to suggest a legally correct instruction because "the trial court, especially in hearing objections after the instructions have been given, is making on-the-spot choices; and when the instruction offered by the lawyer is manifestly overbroad, the district judge may reject [it] without assuming the burden of editing it down to save some small portion that may be viable." *Parker*, 76 F.3d at 12 (citing *Chase v. Consol. Foods Corp.*, 744 F.2d 566, 570 (7th Cir. 1984)); *see also Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 845 (D.C. Cir. 1998)

(citing *Parker*: "The district court was under no obligation to tinker with the flawed proposed instruction until it was legally acceptable.").

The jury was correctly instructed on the pertinent law in this case, and Sachs neither objected to the instructions nor points to any legal error in the instructions. The jury never expressed any confusion in this case. The jury asked to review evidence, which signifies only that the jury was taking its responsibility seriously. Even if the jury had been confused about the instruction on defense of self or others, Sachs failed to propose a legally correct instruction rectifying the confusion. Counsel wanted the Court to instruct the jury that Sagendorf had committed a battery the moment he touched Sachs—the S&W Defendants had not conceded this point, and therefore, it was a matter for the jury to decide. This instruction would have been error. The Court's refusal to give the instruction is not a basis for setting aside the verdict.

Second, the two jurors' postverdict statements are not grounds for a new trial. Subject to exceptions not relevant here, a Court is prohibited from considering a juror's statements about her "mental processes concerning the verdict" if those statements are offered to impeach the verdict.[2] Fed. R. Evid. 606(b)(1); *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 107 (2d Cir. 2004). This rule furthers many important policies, including the policy of discouraging losing parties from harassing jurors. *Munafo*, 381 F.3d at 107 (citing *McDonald v. Pless*, 238 U.S. 264 (1915)). This evidentiary rule applies to courts deciding motions under Rule 59. *Id.* at 106–08. The Court is therefore precluded from considering the two jurors' statements as a basis for granting a new trial.

---

[2] Sachs has not submitted affidavits from the jurors or counsel describing these statements. Nevertheless, the Court understands counsel's argument as an affirmation that the jurors made the statements he described.

Even if the Court could consider these statements, Sachs would not be entitled to a new trial. Jurors 3 and 8 stated that they found for the S&W Defendants because Sagendorf was entitled to defend himself from Sachs's slaps and kicks. These statements are consistent with the jurors' finding that Sagendorf did not commit an assault or battery by touching Sachs and guiding her out of the bar, and therefore, he was not the initial aggressor. These statements are also consistent with the jurors' finding that Sagendorf was initially defending the bartender, and later defending himself. Both findings would result in a verdict for the S&W Defendants. These jurors' statements do not indicate that they failed to follow the law.

### III.   Motion for Attorney's Fees

The Court may award attorney's fees to defendants who prevail in a § 1983 action if any of the plaintiff's claims were "frivolous, unreasonable, or without foundation." *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (*per curiam*)). These awards are intended to protect defendants from baseless litigation. *Id.* (quoting *Christiansburg*, 434 U.S. at 420). The statutory authority for an award of attorney's fees, 42 U.S.C. § 1988, specifies that the court "may" award a fee "in its discretion." *See id.* at 2216 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) ("The essential goal in shifting fees . . . is to do rough justice. . . . [T]rial courts may take into account their overall sense of a suit . . . . And appellate courts must give substantial deference to these determinations . . . ."); *Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006) (applying abuse of discretion standard to denial of fees to prevailing defendants). The Court may award fees even if the plaintiff brought her frivolous claims in good faith. *Christiansburg*, 434 U.S. at 421. But it is essential that district courts "resist the understandable temptation" to conclude that, because a plaintiff lost, her action must have been unreasonable. *Id.* at 421–22.

The City Defendants' motion for fees presents a close question, particularly in light of the numerous inconsistencies in Sachs' testimony at trial. Nevertheless, the Court declines to award fees here. There is less than perfect clarity about what transpired among Sachs, Sagendorf, Musa, and Basil. While the Court is highly skeptical of Sachs's account, the medical records discussing a fractured patella are some evidence in favor of her account that the officers intentionally caused her to fall and injure her knee. Therefore, her claims against the City Defendants were not *entirely* baseless—a high standard to meet. Even if Sachs's claims were entirely baseless, the Court would still decline to award fees here. Sachs appears to have a genuine belief that she was unlawfully injured by Defendants. A plaintiff's good faith does not preclude an award of attorney's fees, but it is a factor that weighs heavily against such an award. There are no other indications that the Court must step in to protect the City Defendants from particularly burdensome litigation. Therefore, even if some of Sachs's underlying claims were baseless, the Court would, in its discretion, deny an award of attorney's fees.

## IV.   Motion for Sanctions

In an affirmation filed in opposition to the City Defendants' motion for attorney's fees—weeks after such opposition was due, and with no acknowledgement of her tardiness—Sachs tacks on a final paragraph moving for sanctions against counsel for the City Defendants. This "motion" is deficient in many ways. Sachs cites no legal authority, and, to the extent that she seeks sanctions under Rule 11 of the Federal Rules of Civil Procedure, her motion is procedurally improper. *See* Fed. R. Civ. P. 11(c)(2). The motion is denied.

**Conclusion**

For the foregoing reasons, all pending motions are DENIED. The Clerk of Court is directed to terminate the motions at docket numbers 215 and 217.

SO ORDERED.

Dated: May 8, 2014
   New York, New York

_____
J. PAUL OETKEN
United States District Judge